UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN HUGHES,

Plaintiff,

v.

FLINT GOLF CLUB and JOE MORRISON, INDIVIDUALLY,

Defendants.
_________________________________/

Case No. 08-12876

Honorable Nancy G. Edmunds

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [24]**

This employment dispute comes before the Court on Defendants Flint Golf Club ("Flint Golf")'s and Joe Morrison's motion for summary judgment. Plaintiff Susan Hughes was terminated from Flint Golf on April 4, 2008. Hughes' complaint alleges a retaliation claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, and an age discrimination claim under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2202(a). Defendants' motion for summary judgment is DENIED. Plaintiff made a prima facie case of unlawful discrimination and has produced enough evidence for a reasonable jury to conclude that she was terminated because of her FMLA leave and her age.

## I. Facts

Defendant Flint Golf Club is a country club in Flint, Michigan. Plaintiff worked at Flint Golf from 1982 until she was discharged on April 4, 2008; with a short hiatus from May 1983 to February 1984. (Pl.'s Dep. at 219, 222.) She began working as a waitress and

was promoted to Assistant Manager in 1989. (*Id*. at 222, 225-26; Pl.'s Ex. 5, Resume.) Just before she was discharged, Plaintiff's job title was changed to "Clubhouse Manager," but her job responsibilities remained the same. (Pl.'s Dep. at 256-63.) As Assistant Manager, Plaintiff's job duties included maintaining the point-of-sale computer system, ordering and setting prices for liquor, maintaining labor costs, dining room management, promotion of club events and membership, inventory, training of staff, hiring and firing, and budgeting. (Pl.'s Dep. at 226-231, 236, 241-42.)

Defendant Morrison was a member of Flint Golf's board of directors since 2001. In 2005, he became the board's vice president. In 2006, he became president, and in 2007, he became the chairman. (Morrison Dep. at 9, 14.) During this time, Morrison was at Flint Golf almost daily; engaged in hands-on management; exercised supervisory authority over employees, including Plaintiff; and conversed with Plaintiff almost daily about clubhouse management, offering advice and criticism and giving orders. (Pl.'s Aff. at ¶¶ 3-5.) In February 2008, Morrison became Flint Golf's interim general manager. (Morrison Dep. at 62; Plaintiff's Dep. at 129.)

From mid-November 2007 until mid-December 2007, Plaintiff took a four-week FMLA leave following arthrosporic surgery on her left knee for a torn meniscus. In August 2007, Plaintiff began to have pain and swelling in her knee. Her doctor suspected that she had a torn meniscus and referred her to an orthopedic surgeon. The surgeon confirmed that she had a torn meniscus, told her that surgery was necessary, and told her that she would suffer further damage to her knee if she continued to use it without having surgery. The surgeon scheduled surgery for his next available date. Plaintiff had surgery on November 19, 2007, and returned to work four weeks later. (Pl.'s Dep. at 187-198.)

Prior to taking her FMLA leave, Plaintiff never received any discipline. Rather, during her 25 years at Flint Golf, she received performance-based raises and bonuses almost every year. (Pl.'s Aff. at ¶ 7.) She was also well-liked and found capable by both co-workers and customers.

Former Banquet Chef Ellen Curey, who was employed with Flint Golf from 2000 to 2008, provides an affidavit averring that Plaintiff's "organizational skills were excellent," "the fine dining area ran extremely smoothly when she was in charge," "employees frequently" asked her questions "because of her experience and knowledge," "[s]he was always eager to help" and "was well respected by all the individuals who worked in the kitchen," and her training of employees was "comprehensive and very hands-on." (Curey Aff. ¶¶ 2-9.)[1] She further avers that, since Plaintiff's departure, "the quality of service at the Flint Golf Club deteriorated" and is "much less organized." (*Id.* at ¶ 9.)

Brian Pizzimenti, Plaintiff's former supervisor and Club Manager at Flint Golf from 1989 to 1994, also provided an affidavit. He avers that Plaintiff did "an excellent job" in her position as Assistant Manager, she worked very well with staff and guests, she took the initiative when the first computer system was installed at Flint Golf and "was instrumental in training all the staff," she was "competent and extremely diligent" in her administrative duties, she "developed and completed all of the Flint Golf Club's manuals," "did all of the liquor ordering and wine ordering," and she was "very flexible and willing to change." (Pizzimenti Aff. ¶¶ 2-11.)

---

[1]Despite Defendants' arguments to the contrary, Ms. Curey's affidavit is proper because she was included as a witness on Plaintiff's witness list. Defendants' witness list includes Ellen Curey and Plaintiff's witness list includes "any and all witnesses listed by Defendant." (Reply Exs. 2 and 3.) This is sufficient.

A frequent customer, Jeannine Ferguson, also provided a supporting affidavit:

> Over the past several years, I have dined frequently at the Flint Golf Club as part of the organization named American Businesswomen. In this capacity, I have witnessed Ms. Hughes' work on many occasions. From my observation, Ms. Hughes always had an excellent work attitude and took pride in her work. I was able to witness her management style and supervision of others at the Flint Golf Club. She had a very good and efficient management style that led me to tell her that she was capable of running the Club herself.

(Ferguson Aff. ¶¶ 4-6.)

After she returned from her FMLA leave, Plaintiff testifies that both Defendant Morrison and Flint Golf's Executive Chef, Steve Skomski, treated her differently. (Curey Aff. ¶ 17-19; Pl.'s Dep. at 99-102.) Plaintiff subsequently learned that both were upset about her taking FMLA leave. Executive Chef Skomski was overheard complaining to another employee about Plaintiff's leave, suggesting that it was vacation rather than necessary surgery. (Curey Aff. ¶¶ 12-14.) In December 2007, Defendant Morrison admits that he complained about Plaintiff's FMLA leave to Flint Golf's General Manager at the time, Rick Dewling:

> And I said, "Where is Sue?" And he said, "Well, she took elective surgery." I said, "What do you mean she took elective surgery?" "Well, she had an operation on her knee and she decided to do elective surgery." And at that time I expressed a little -- I was upset. I said, "Well, why would she do that now?" And his response was, "I have no idea."

(Morrison Dep. at 42-43.)

Also, after returning from her FMLA leave in mid-December 2007, Plaintiff testified that she was subjected to almost daily criticism from Defendant Morrison, including comments that "everybody was passing her by," that she was "standing still," that she "worked like it was ten years ago," that she was like a turtle family on a Comcast commercial called the "Slowski Family" thus implying that she was too slow, and that she "was not 21st Century."

(Pl.'s Dep. at 101-05, 298, 316, 335-36.) Plaintiff construed these to be comments about her age; that she was too old and out of touch. (Pl.'s Dep. at 298.) Also, on New Year's Eve, December 31, 2007, Defendant Morrison told Plaintiff that she was working like she had "her thumb up her ass." (*Id*. at 114-18.) Defendant Morrison admits that he made this comment to Plaintiff. (Morrison Dep. at 110-12.) He also admitted that, prior to Plaintiff's FMLA leave, he never swore at her or raised his voice with her to that extent. (Morrison Dep. at 114.) Also, on March 25, 2008, while Plaintiff and Defendant Morrison were discussing her job performance, Morrison raised Plaintiff's FMLA leave. In "a very accusatory tone," Morrison told her that then-general manager Rick Deweling had told him that Plaintiff's knee surgery was elective and could have waited until January. (Pl.'s Dep. at 99-100.) Even though Plaintiff explained to Morrison that her surgery was not elective, he appeared to remain unsatisfied, and his conduct toward her continued to deteriorate. (*Id.* at 100; Pl.'s Aff. ¶¶ 8-9; Curey Aff. ¶ 17.)

Defendant Morrison constantly criticized Plaintiff. She presents evidence challenging that criticism as unwarranted. First, Plaintiff addresses criticism that she failed to answer the phone. She testified that she did do so; and, if she could not do so, she arranged for phone coverage. Plaintiff also presents Ms. Curey's corroborating testimony that Plaintiff consistently answered the phones. (Pl.'s Dep. at 118, 311; Curey Aff. ¶ 18.)

Plaintiff also refutes Defendant Morrison's criticism that, in March 2008, she "dragged her feet" about getting email access on her computer and that her computer skills were lacking. She testified that she had previously requested a new computer or an upgrade and had been told that Flint Golf could not afford it. After being told that Morrison had ordered an upgrade installed, Plaintiff followed up on that order as requested by Morrison.

(Pl.'s Dep. at 118-122; Pl.'s Aff. ¶¶ 10-11.) Plaintiff also presents evidence that she had to frequently assist Tina Fijardo on Flint Golf's computer system. Tina Fijardo is the woman who replaced Plaintiff as Clubhouse Manager. (Pl.'s Dep. at 183-84.)

Morrison also complained that Plaintiff had abandoned Flint Golf's server training program. Plaintiff disputes this fact, testifying that she "gave a detailed service manual to the staff," did "server shadowing," and reviewed shifts with server and shadower. (Pl.'s Dep. at 125-27.) This server training program was frequently revised and updated. Each time it was revised, it was reviewed by the general manager and had recently been reviewed. (Pl.'s Dep. at 127, 243; Curey Aff. ¶ 9.) Until about one week before she was terminated, Plaintiff testified that she had received no complaints about how she trained the staff. (Pl.'s Dep. at 265-66.) In late March 2008, Executive Chef Skomski asked Plaintiff to use training materials from one of Flint Golf's distributors, U.S. Food, Inc. Plaintiff avers that she expressed her willingness to implement the new training program. (Pl.'s Dep. at 264-65, 271-74; Pl.'s Aff. ¶ 12.) Defendant Morrison concedes that Plaintiff met with U.S. Food at least twice and scheduled a training seminar, but was discharged before it occurred. (Morrison Dep. at 158-61.)

Defendant Morrison also complained that Plaintiff was not keeping up with and was being resistant to management changes. Despite Plaintiff's requests that Morrison be more specific so that she could comply, he failed to come up with specific ways for her to improve her performance. Plaintiff also presents evidence attesting to her successful managerial skills. (Pl.'s Dep. at 127-28; Curey Aff. ¶¶ 19-21; Ferguson Aff. ¶ 6.)

In the two weeks leading up to her termination, Defendant Morrison and Executive Chef Skomski met with Plaintiff frequently, telling her that she was "behind the times," that

she "wasn't on board," and that "everyone was passing her by." (Pl.'s Dep. at 293-298.) On April 2, 2008, Defendant Morrison and Executive Chef Skomski called Plaintiff into a meeting. They gave her three options: (1) termination, (2) resignation that also required execution of a release, or (3) a 30-day probation. (Pl.'s Dep. at 325-26; Pl.'s Ex. 9, Proposed Release.) Plaintiff chose to keep her job and take a 30-day probation. Morrison testified that she told him, "You know, I'll try and see what -- I think I can get on board and, you know, that's what I want to do." (Morrison Dep. at 171-74.) The very next day, Defendant Morrison and Executive Chef Skomski decided to discharge Plaintiff anyway. (Morrison Dep. at 24-25; Pl.'s Ex. 10, Employee Termination Form.)

On April 4, 2008, Plaintiff was discharged during a meeting with Defendant Morrison and Executive Chef Skomski. (Defs.' Ex. E, Morrison notes of 4/4/08 Termination Meeting.) Plaintiff was fired without progressive discipline, although Flint Golf had a progressive discipline policy. (Morrison Dep. 180-81; Pl.'s Ex. 10, Employee Termination Form.)

Plaintiff's termination form provides that Steve Skomski was her supervisor and that she was fired for "management restructuring -- offered severance pay/vacation." (Pl.'s Ex. 10, 4/4/08 Employee Termination Form.) In his personal notes, Defendant Morrison stated that the reasons for Plaintiff's termination was that her "[p]erformance [was] just not up to speed with expectations of new management structure." (Defs.' Ex. E at 1.) As support, the notes state that Plaintiff failed to answer the phones, to make efficient use of computers, to make management changes quickly enough, to adopt a formal server training program, and to appreciate the extent of her duties as Clubhouse Manager. (*Id.* at 1-2.) It further documents that, "Steve Skomski [Plaintiff's] immediate supervisor came to [Morrison] and it was decided that we needed to make a change and we could not wait

any longer with the inevitable." (*Id.* at 3.) Later, Skomski posted a notice to employees informing them that Plaintiff had "submitted her resignation" to him and Mr. Morrison and that they had accepted it. (Pl.'s Ex. 11, Skomski Posting; Curey Aff. ¶ 10.) That notice also advised that Tina Fajardo had been selected to replace Plaintiff as Clubhouse Manager. (*Id.*) Tina Fajardo was 40 years old at that time, and Plaintiff was 50. (Pl.'s Ex. 12, Defs.' Interrog. Ans. 13.) Fajardo had worked at Flint Golf for approximately one year, and Plaintiff had been her supervisor. (Pl.'s Dep. at 175-78.)

After being fired, Plaintiff filed this lawsuit, alleging retaliation in violation of the FMLA and age discrimination in violation of Michigan's ELCRA.

## II. Summary Judgment Standard

Summary judgment is appropriate only when there is “no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(c). The central inquiry is “whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.” *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party’s case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most

favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. Analysis

This matter is now before the Court on Defendants' motion for summary judgment. As to Plaintiff's FMLA claim, Defendants argue that there is no direct evidence that they retaliated against Plaintiff because she took FMLA leave; and Plaintiff cannot establish a prima facie case using circumstantial evidence because there is no causal link between her FMLA leave and her discharge. As to Plaintiff's age discrimination claim, Defendants argue that there is no direct evidence of age discrimination; and Plaintiff cannot establish a prima facie case using circumstantial evidence because (1) she was not qualified for the job of Clubhouse Manager, and (2) she was not replaced by a significantly younger person. Finally, as to both claims, Defendants argue that Plaintiff failed to mitigate her damages. This Court disagrees with Defendants. Construing the evidence, as it must, in Plaintiff's favor, Plaintiff has made out a prima facie case of unlawful discrimination and has produced enough evidence for a reasonable jury to conclude that she was terminated because of her FMLA leave and because of her age. Moreover, genuine issues of material fact exist for trial regarding Plaintiff's mitigation of damages.

### A. Retaliation Under FMLA

The FMLA affords employees protection from retaliation or discrimination for exercising their FMLA rights. *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008) (citing 29 U.S.C. § 2615(a)(2)). "An employer's motive is an integral part of the analysis because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." *Id*. (internal quotation marks and citation omitted).

FMLA retaliation claims may be established by either direct or circumstantial evidence. *Id*. Plaintiff first alleges that she has direct evidence that Defendants retaliated against her because she invoked her FMLA rights. Plaintiff is mistaken. Despite evidence that Defendant Morrison and Skomski made negative remarks about her FMLA leave, this is not direct evidence of retaliation. Plaintiff grounds her retaliation claim on her termination, and "[a]n inference is required to connect" Defendants' challenged statements "to the decision to terminate" Plaintiff. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524-25 (6th Cir. 2007). "This fact distinguishes" Plaintiff's case from others where the employer made discriminatory statements "during the conversation in which the employee was terminated." *Id.* at 525 (citing *DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836, 838 (Mich. 2001)).

Because Plaintiff does not have direct evidence of unlawful retaliation, this Court must evaluate her claim under the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bell v. Prefix, Inc.*, Nos. 07-2059, 07-2484, 2009 WL 877699, *3 (6th Cir. Apr. 2, 2009). First, Plaintiff "must make a prima facie case of unlawful retaliation." *Id*. If she succeeds, we proceed to the second step. Defendants "must offer a legitimate, nondiscriminatory reason" for Plaintiff's

termination. *Id*. If Defendants do so, we proceed to the third step where Plaintiff is required "to show that the proffered reason is pretextual. *Id*.

**1. Plaintiff's Prima Facie Case**

As the Sixth Circuit recently observed in *Bell*, "[e]stablishing a prima facie case of discriminatory intent is not difficult: [Plaintiff] must merely present some evidence of circumstances which give rise to an inference of unlawful discrimination." *Id.* Plaintiff may establish her prima facie case by showing that: (1) she engaged in activity protected by the FMLA; (2) Defendants knew that she was exercising her statutorily protected rights; (3) she suffered an adverse employment action; and (4) "there was a causal connection between the protected activity and the adverse employment action." *Morris v. Family Dollar Stores of Ohio, Inc.*, No. 07-3417, 2009 WL 899894, *6 (6th Cir. Mar. 31, 2009).

Defendants do not challenge Plaintiff's ability to establish the first three elements. Rather, they argue that there is no causal nexus between Plaintiff taking her FMLA leave and her termination. Moreover, Defendants assert that Plaintiff was terminated for failing to implement a wait staff training program, for failing to communicate through company email, and for failing to promote membership by answering the telephones.

Defendants present evidence that, after Plaintiff confronted Morrison about his negative statements about her FMLA leave in March 2008 and she told him that her knee surgery was necessary, Morrison apologized. "To my -- the best of my recollection, that was the end of the story and I accepted what she said, because Sue was Sue and I don't think that she is going to BS anybody on that." (Morrison Dep. at 87-89.) Plaintiff, on the other hand, presents evidence that this was not the end of it. First, there is ample evidence that Defendants' criticism of her first occurred and increased after her FMLA leave.

Second, before her FMLA leave, she had never been disciplined and had consistently received raises and promotions. Third, Plaintiff was discharged only three and one-half months after returning from her FMLA leave. Fourth, Defendants offered various reasons for Plaintiff's departure; i.e., that she was fired for "management restructuring," that she had "resigned," and that she was terminated because of her job performance. (Compare Pl.'s Ex. 10, 4/4/08 Employee Termination Form; with Defs.' Ex. E, Morrison termination notes at 1; and Pl.'s Ex. 11, Skomski Posting.) Fifth, Defendants failed to follow Flint Golf's progressive disciplinary policy when it fired Plaintiff. When Defendant Morrison's comments about Plaintiff's FMLA leave are considered along with Plaintiff's other evidence, there is sufficient evidence of a causal link to defeat summary judgment. "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence to permit a reasonable jury to conclude that he or she suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination." *Blair*, 505 F.3d at 529.

The Court next examines whether Defendants nondiscriminatory reasons for Plaintiff's discharge were pretext. "Generally, to show pretext, a plaintiff must demonstrate that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Blair*, 505 F.3d at 532. Plaintiff has presented evidence that each of the reasons Defendants proffered for her termination had no basis in fact. These include evidence challenging Defendants' claims that she failed to answer the telephones, was unwilling to upgrade her computer for emailing, failed to implement a server training program and was "dragging her

feet" on implementing one from U.S. Food, and that she was resistant to new management changes.

Plaintiff also argues that Defendants' proffered nondiscriminatory reasons for her discharge did not actually motivate her discharge. "To evaluate whether a plaintiff has created a genuine issue of material fact" under this pretext prong, the Court examines "the evidence the plaintiff produces to establish a prima facie case, evidence discrediting the defendant's proffered reason, as well as any additional evidence the plaintiff chooses to put forth." *Id.* Considering the evidence Plaintiff presents here, she has created a genuine issue of material fact under this pretext prong as well.

In light of the above, Defendants are not entitled to summary judgment on Plaintiff's FMLA retaliation claim. The Court now considers her claims of age discrimination.

**B. Age Discrimination**

Plaintiff also brings an age discrimination claim under Michigan's ELCRA, Mich. Comp. Laws § 37.2202(1)(A). Similar to her FMLA retaliation claim, Plaintiff may prove this claim by either direct or circumstantial evidence. *See Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 192 (Mich. 2003). Plaintiff first argues that she has direct evidence of age discrimination. This argument fails for the same reasons her direct evidence argument was rejected on her FMLA retaliation claim. Although Plaintiff presents evidence that Defendants made negative comments about her; i.e., that she's not 21st Century, that everyone is passing her by, that she's too slow, and that she's resistant to change, inferences are necessary to draw the conclusion that she was discharged and thus discriminated against because of her age. Because Plaintiff does not have direct evidence of unlawful age discrimination, she must, and does, use circumstantial evidence to

establish her age discrimination claim, applying the burden-shifting approach set out in *McDonnell Douglas Corp*. *See Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521 (Mich. 2001) (observing that the Michigan Supreme Court has adopted the *McDonnell Douglas* approach for use in age discrimination cases).

To establish her prima facie case of age discrimination, Plaintiff must show that "(1) she was a member of the protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a younger person." *Lytle v. Malady*, 579 N.W.2d 906, 916 (Mich. 1998). "Once plaintiff has sufficiently established a prima facie case, a presumption of discrimination arises. The burden then shifts to the defendant to articulate a 'legitimate, nondiscriminatory reason' for plaintiff's termination to overcome and dispose of this presumption." *Id.* at 914-15. "Once the defendant produces such evidence, even if later refuted or disbelieved, the presumption drops away, and the burden shifts back to plaintiff." *Id.* at 915. To defeat summary judgment at this step, the plaintiff much show "that there was a triable issue that the employer's proffered reasons . . . were a mere pretext for discrimination." *Id.*

Defendants argue here that Plaintiff cannot establish the first and fourth elements of her prima facie case because she was not qualified for the Clubhouse Manager job and because she was not replaced by a "significantly" younger person. This Court disagrees.

To support their argument that Plaintiff is not qualified for the Clubhouse Manager job, Defendants cite the same reasons they provide for terminating her from that position. The Sixth Circuit has cautioned, however, that "a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir.

2003). "To do so," the court explained, "would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." *Id.* The *Wexler* Court then set out what is required to satisfy this qualification prong:

> At the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job. The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills.

*Id.* at 575-76 (internal citations omitted).

Applying that standard here, Plaintiff presents evidence that she was objectively qualified for the Clubhouse Manager position; i.e., she successfully performed the same duties required for Clubhouse Manager when she was Assistant Manager at Flint Golf, she possesses the required general skills for that position, she has ample experience in the relevant industry, she has the required organizational skills and management capability, she has years of experience in successfully training servers, her computer skills allowed her to assist others including the younger woman who replaced her, and she received merit bonuses and raises almost every year she worked in a capacity similar to that of Clubhouse Manager.

Defendants also argue that Plaintiff cannot establish the fourth element of her prima facie case because her replacement was only ten years younger than her. The decisions Defendants rely upon fail to support the argument that the ten-year age gap between Plaintiff and her replacement was too insignificant to give rise to an inference of age

discrimination. In *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996), the Supreme Court rejected an argument that this fourth factor requires that the plaintiff be replaced "by someone under 40," the protected class under the ADEA. *Id.* at 312. "The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age*." *Id.* The Court further explained that:

> [T]he proper solution to the problem lies not in making an utterly irrelevant factor an element of the prima facie case, but rather in recognizing that the prima facie case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion. In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker wit another worker insignificantly younger. Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.

*Id.* (internal quotation marks, citation, and italics omitted). The Michigan Court of Appeals' decision in *Meagher v. Wayne State University*, 565 N.W.2d 401, 410 (Mich. Ct. App. 1997), quotes *O'Connor* and observes the well-established principles discussed above.

Plaintiff has presented evidence that the age gap between her and her replacement is ten years. This is sufficient. As the Sixth Circuit observed in *Grosjean v. First Energy Corp*., 349 F.3d 332, 340 (6th Cir. 2003), "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." Here, the age difference between Plaintiff and her replacement is greater than six years. Moreover, although the Michigan courts have not set a similar age cutoff, the Michigan Court of Appeals has found an 11-year gap sufficient to establish the fourth prong of a plaintiff's prima facie age discrimination

case. *See Foehr v. Republic Automotive Parts*, 538 N.W.2d 420, 424 (Mich. Ct. App. 1995). Accordingly, Plaintiff has presented sufficient evidence as to the fourth element of her prima facie age discrimination case to defeat summary judgment.

Defendants also argue that Plaintiff cannot establish that their legitimate, nondiscriminatory reasons for her discharge are a pretext for age discrimination. For all the reasons provided under the pretext discussion of Plaintiff's FMLA claim, Defendants argument is rejected. Considering the evidence Plaintiff presents here in the light most favorable to her, she has created a genuine issue of material fact on the issue of pretext.

The alleged discriminatory statements at issue here are relevant to the issue of pretext. As the Sixth Circuit observed in *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354-55 (6th Cir. 1998), "remarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nonetheless played a meaningful role in the decision to terminate the plaintiff, [are] relevant. Similarly, the discriminatory remarks of those who may have influenced the [adverse employment] decision . . . may be relevant when the plaintiff challenges the motive behind that decision." Defendant Morrison concedes that he played a meaningful role in the decision to terminate Plaintiff. Moreover, despite Defendants' arguments to the contrary, these comments were not isolated or so ambiguous that they cannot support a finding of age discrimination when viewed in a light most favorable to Plaintiff and in the context of Plaintiff's additional evidence of pretext. *See id*. at 355-56. Accordingly, Plaintiff's age discrimination claims survive Defendants' motion for summary judgment.

**C. Mitigation of Damages**

Finally, Defendants seek summary judgment on an element of Plaintiff's damages arguing that she failed to sufficiently mitigate her damages. Plaintiff responds that, within three months of her discharge, she obtained full-time employment earning approximately 75% of wages she was earning at Defendant Flint Golf at the time of her discharge (after 25 years of employment with consistent raises) and also obtained supplemental part-time work. (Pl.'s Dep. at 4, 42.) Construing this evidence in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff has made reasonable efforts to mitigate her damages.

## IV. Conclusion

For the above-stated reasons, Defendants' motion for summary judgment is DENIED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: June 25, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 25, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager